CHARLOTTE J. GORRELL v. GREENSBORO WATER SUP-
PLY CO.

(Decided April 4, 1899).

*Contract—Parties and Beneficiaries—Right to Sue.*

1. One not a party or privy to a contract, but who is a beneficiary
   thereof—who furnishes the consideration money of the con-
   tract—is entitled to maintain an action for its breach.

2. Where a party undertakes to furnish water in such mode and
   quantity that it may be used to extinguish fires in the city,
   in which it is to be supplied, damage sustained by a citizen
   and taxpayer by the destruction of buildings, by the failure
   to so furnish such water, is a natural and proximate conse-
   quence of such breach of the undertaking, and entitles him
   to sue.

CIVIL ACTION for recovery of damages by fire through
negligent failure of defendant to furnish water to extinguish
the same, heard by *Robinson, J.,* upon complaint and de-
murrer at February Term, 1898, of GUILFORD Superior
Court. The demurrer was overruled and defendant required
to answer. The defendant excepted and appealed. The
grounds of the demurrer controverting the merits of the ac-
tion and the plaintiff's right to sue are considered in the
opinion.

Messrs. *King & Kimball,* for defendant (appellant).
Messrs. *Boyd & Brooks,* for plaintiff.

CLARK, J., delivers the opinion.
FAIRCLOTH, C. J., and FURCHES, J., dissent.

CLARK, J. This cause is presented upon complaint and
demurrer. The complaint avers authority conferred upon the
City of Greensboro by its charter to provide water supplies
either by erecting waterworks itself or by contract, and that

in pursuance thereof the city contracted with the Greensboro Water Company to furnish said city "with pure and wholesome water for the use of its citizens and of force at all times sufficient to protect the inhabitants of the city against loss by fire," giving to said Company exclusive rights of eminent domain over its streets, alleys, sidewalks and public grounds for the purpose of laying and operating water-mains, pipes, hydrants, stands, etc.; that subsequently all the rights and property of said water company passed by sale to the defendant, who at the same time assumed all the duties and obligations imposed by the aforesaid contract, and both the defendant and the city had acquiesced in the same; that by virtue of said contract it was stipulated and agreed *inter alia* that the Water Company should "supply the city and inhabitants with pure, good and wholesome water, suitable for all domestic, sanitary and fire purposes, and for individual use;" should "erect and maintain settling basins, filtering galleries, reservoirs, water-towers, pump-houses and other appurtenances and attachments necessary or expedient for the proper conducting and carrying on said waterworks, so as to afford at all times the most adequate supply for all domestic uses and the greatest protection against fire." The remainder of the complaint is as follows:

8. That it was also stipulated and agreed by and under said contract that the said Water Company should use only first-class machinery, pipes, hydrants, valves, pumps, etc., in connection with said waterworks, and that the said works should be complete in all its details with a capacity to furnish one and a half million gallons of water every twenty-four hours against a pressure of two hundred feet head. And should erect a storage water tank whose top water level should be one hundred feet above the surface of the ground at the center of the public square and to be of a capacity of 100,000

gallons of water, and that the same shall be filled by the said Water Company to its top every day an hour before sundown. And for the extinguishment of fire in said city the Company shall erect a pump-house and put therein a pumping engine which shall be kept ready at all times to supply the needed fire pressure.

9. That it was further stipulated and agreed by and under said contract that the said Water Company should erect and put in seventy-five hydrants at such places as the city might designate, and for the rents of which said City of Greensboro was to pay them annually $2,875. And in pursuance of such agreement and compliance therewith on the part of the city, the Water Company did erect, and their successors, the Greensboro Water Supply Company, had in possession and use at the times hereinafter mentioned, two hydrants—one a hundred and the other about two hundred feet distant from plaintiff's store-houses which were destroyed by fire on the date hereinafter mentioned.

10. That by the terms of said contract it was further stipulated and agreed that the said Water Company should keep a pressure of water for fire purposes sufficient to throw six streams of water from six hydrants, to a vertical height of 100 feet in still air, each stream being taken from one hydrant and with 100 feet of hose and a one-inch ring nozzle and the said Company shall constantly, day and night, except from unavoidable accidents, keep all the said hydrants supplied with water for fire service and shall keep them in good order for said service.

11. That said contract was made with the said Greensboro Water Company and extended to and acquiesced in by their successors, the defendant Greensboro Water Supply Company, for the use and benefit of all its property owners and inhabitants—among which was the plaintiff, who was a

property owner in said city, at the times hereinafter referred to and for several years prior thereto, in common with that of other citizens of said city, which said property was taxed at its full value to raise money with which to pay said hydrant rents.

12. That on the night of the ——— day of June, 1897, a fire broke out in a building some thirty feet distant from plaintiff's store-rooms on the south side of South Elm street in said city; that the fire alarm was at once turned on and in less than ten minutes thereafter the Greensboro Fire Company arrived at said fire with their hose, fire engine and other appurtenances necessary for the ready extinguishment of said fire. That the said fire company attached its hose, which were in every respect adequate and sufficient for the demands of the occasion, as plaintiff is advised and believed, to the two hydrants above mentioned, one 100 feet from said store-rooms and the other about 200 feet distant, each of which said hydrants were sufficiently near to said store and lot to have afforded water adequate for the ready extinguishment of said fire, if the proper pressure had been on same.

13. That notwithstanding the promptness of the fire company in reaching said fire and the perfect sufficiency of its equipments to convey the water to same, the defendant, as plaintiff is advised and believes, persistently, carelessly and negligently refused to furnish said hydrants above described and referred to with a sufficient pressure of water to extinguish said fire, and by reason of such tortious and negligent conduct on the part of the defendant the said fire spread from the building in which it originated and ignited the store-room of the plaintiff.

14. That after the fire had spread to and caught on flames the building of the plaintiff the said fire company, as plaintiff is advised and believes, was still present with its hose, ladders, buckets, engine, etc., ready to use its every effort to

extinguish same, and while the said fire company had its hose attached to said hydrants sufficiently near, with the proper pressure, to have quickly extinguished same and saved plaintiff's property from burning, the defendant persistently refused, neglected and omitted to have the fire pressure agreed to and required by its contract and only furnished pressure sufficient to throw a stream ten feet from end of said regulation hose, by carelessly, negligently and wrongfully failing to keep any water in its water tank, or even its hydrants and pipes full, and not having its pumping-engine at work; by reason of which negligent, wrongful and tortious conduct on the part of the defendant, the plaintiff's property was totally destroyed by fire, and by reason of such loss she has been damaged in the sum of $5,000.

15. That the said fire originated in an adjacent building to plaintiff's, and that the destruction of her property by same was not occasioned by any mistake, carelessness, or negligence on her part, but solely on account of the careless, willful and wanton neglect on the part of the defendant to furnish the hydrants above referred to with the water which they were required, and had obligated themselves to do, and upon their doing of which plaintiff confidently relied.

16. That as plaintiff is advised and believes, defendant's failure to provide sufficient water for the extinguishing of said fire was not occasioned by any unavoidable accident or lack of water in the reservoir from which they originally take same, but was the result of a wanton, careless and willful neglect and disregard for their duties and obligation contracted and owed to the several inhabitants of the City of Greensboro, including the plaintiff.

Wherefore plaintiff demands judgment against the said Greensboro Water Supply Company for the sum of $5,000 damages and the cost of this action. And for such other and further relief as the Court may deem plaintiff entitled.

The demurrer admits the allegations of the complaint to be true. ˙ Those grounds of demurrer which allege omission of technical or formal averments in the complaint we deem not well taken, and to require no discussion. The demurrer so far as it relates to the merits of the case is substantially that the complaint has stated no cause of action:

(1) Because the plaintiff, though a citizen and taxpayer of Greensboro (as alleged in the complaint), is neither a party nor privy to the contract, the breach of which is the foundation of the action.

(2) The failure of the defendant to furnish water was not the proximate cause of the plaintiff's loss.

It is true the plaintiff is neither a party nor privy to the contract, but it is impossible to read the same without seeing that, in warp and woof, in thread and filling, the object is the comfort, ease and security from fire of the people, the citizens of Greensboro. This is alleged by the eleventh paragraph of the complaint, and is admitted by the demurrer. The benefit to the nominal contracting party, the City of Greensboro, as a corporation, is small in comparison, and taken alone, would never have justified the grants, concessions, privileges, benefits and payments made to the Water Company. Upon the face of the contract, the principal beneficiaries of the contract in contemplation of both parties thereto were the Water Company on the one hand and the individual citizens of Greensboro on the other. The citizens were to pay the taxes to fulfill the money consideration named, and furnishing the individual citizens with adequate supply of water and the protection of their property from fire was the largest duty assumed by the Company. One not a party or privy to a contract, but who is a beneficiary thereof, is entitled to maintain an action for its breach. This has been sustained by many decisions elsewhere. *Tillis v. Har-*

*rison,* 104 Mo., 270; *Lawrence v. Fox,* 20 N. Y., 268; *Simpson v. Brown,* 68 N. Y., 355; *Vrooman v. Turner,* 69 N. Y., 280; *Wright v. Terry,* 23 Fla., 160; *Austin v. Seligman,* 18 Fed. Rep., 519; *Burton v. Larkin,* 36 Kan., 246; and even when the beneficiary is only one of a class of persons, if the class is sufficiently designated. *Johannes v. Insurance Companies,* 66 Wis., 50. It was considered though without decision by this Court in *Haun v. Burrell,* 119 N. C., 544, 548 and *Sams v. Price, Ibid,* 572. Especially is this so when the beneficiaries are the citizens of a municipality whose votes authorized the contract and whose taxes discharge the financial burdens the contract entails. The officials who execute the contract are technically the agents of the corporation, but the corporation itself is the agent of the people, who are thus effectively the principals of the contract. The acceptance of the contract by the Water Company carries with it the duty of supplying all persons along its mains. *Griffin v. Water Co.,* 122 N. C., 206; *Hangen v. Water Co.,* 14 L. R. A., 424.

In *Paducah Lumber Co. v. Paducah Water Supply Co.,* 89 Ky., 340 (1889), it is held: "If a water company enter into a contract with a municipal corporation whereby the former agrees, in consideration of the grant of a franchise and a promise to pay certain specified prices for the use of hydrants to construct waterworks of a specified character, force and capacity, and to keep a supply of water required for domestic, manufacturing and fire protection purposes for all the inhabitants and property of the city, a taxpayer of the city may recover of the water company when, through a breach of its contract, he is left without means of extinguishing fire and his property is on that account destroyed," and it is therein further held: "Where a party undertakes to furnish water in such mode and quantity that it may be used to extinguish fires in the city in which it is to be supplied, damages sustained by the destruction of buildings by the failure to so

furnish such water is a natural and proximate consequence of such breach of the undertaking." This opinion is based upon sound reason and is adopted by us. It is conclusive of both points raised as to the merits of the controversy by the demurrer. Indeed it could not be doubted that if the city buildings were destroyed by fire through failure of the defendant to furnish water for their protection as provided by the contract, the city could recover. *New Orleans v. Waterworks,* 72 Fed. Rep., 227. Besides, the complaint, in paragraphs 13 and 14, alleges that the defendant's failure to furnish water as per contract was the direct and sole cause of the loss, and this is admitted by the demurrer. Thus, the question really narrows down to the question whether the beneficiaries of a contract, who furnish the consideration money of the contract, can maintain an action for damages caused by its breach.

The case of *Paducah v. Water Co.* is exactly in point, was reaffirmed on a hearing, and is followed by *Duncan v. Water Co.,* in the same volume, making three decisions altogether. The decisions, however (twelve in number), in other States where the question has been persented, are the other way. But this is a case of the first impression in this State, and decisions in other States have only persuasive authority. They have only the consideration to which the reasoning therein is entitled. They are to be weighed, not counted. We should adopt that line which is most consonant with justice and the "reason of the thing."

Did the people of Greensboro have just cause to believe that by virtue of that contract, they as well as the corporation were guaranteed a sufficient quantity of water to protect their property from fire, and did the Water Company understand it was agreeing, for the valuable considerations named, to furnish a sufficient quantity of water to protect private as well as public property from fire? The intent is to be

drawn from the instrument itself, and on its face there can be no doubt it was contracted that the water supply should be sufficient to protect private as well as public property. If so, it follows that when by breach of that contract private property is destroyed, the owner thereof one of the beneficiaries contemplated by the contract, is the party in interest, and he and he alone can maintain an action for his loss.

As is said by Judge Freeman, the learned annotater of the American State Reports, in commenting on the fact (29 Am. St. Rep., at page 863) that the majority of decisions so far rendered were adverse to the position taken in the Kentucky case above cited and approved by us: "As none of the Courts have fairly faced what seems to be the logical result of these decisions, viz.: that the injured person is left without any remedy at all, it must be admitted that the subject is left in an extremely unsatisfactory position. It seems to be universally agreed, and on the soundest reasoning, that the city itself is not liable for failing to protect the property of taxpayers from fire, unless made liable by express statutory provisions. *Wright v. Augusta,* 78 Ga., 241 (6 Am. St. Rep., 256). And it seems equally clear that the city would have no right of action in such case in behalf of the taxpayer, for the basis of all the (adverse) decisions is that there is no privity of contract between the taxpayers and the water companies. If the contract is not made for the benefit of the taxpayers in such a sense that they can sue upon it, it can hardly be maintained that the same contract is made for one of those taxpayers in such a sense that the city can recover damages in his name. . . . If, then, neither the taxpayer himself nor the city on his behalf can sue the company, the conclusion seems to be that the loss by fire in these cases is regarded by the law as damage for which there is no redress." This is a complete reduction *ad absurdum* and we prefer not to

concur in cases however numerous—there are probably a dozen scattered through half a dozen States—which lead to such conclusion. All these cases (when not based on reference to the others) rest upon the narrow technical basis that a citizen, because not a privy to the contract, can not sue, whereas authorities are numerous that a beneficiary of a contract, though not a party or privy, may maintain an action for its breach. 7 Am. & Eng. Enc. (2d Ed.), 105–108. Here, the Water Company contracted with the city to furnish certain quantities of water for the protection of the property of the citizens as well as of the city, and received full consideration, a large part of which comes in the shape of taxation, paid annually by those citizens. On a breach of the contract, whereby the property of a citizen is destroyed, he, as a beneficiary of the contract, is entitled to sue, and under our Code requiring the party in interest to be plaintiff, he is the only one who can.

Whether there was a breach of the contract and whether it was the proximate cause of the loss, regarded as matters of fact, will be determined by the jury, if, when the case goes back, the defendant shall file an answer as it has a right to do (The Code, section 272) raising those issues. But in overruling the demurrer to the complaint there was no error. As was said by the Supreme Court of Kentucky, when affirming, on a petition to rehear, the decision in the Paducah case, *supra:* "The Water Company did not covenant to prevent occurrence of fires, nor that the quantity of water agreed to be furnished would be a certain and effectual protection against every fire, and consequently does not in any sense occupy the attitude of an insurer; but it did undertake to perform the plain and simple duty of keeping water up to a designated height in the stand-pipe, and if it failed or refused to comply with that undertaking, and such breach was the

124—22

proximate cause of destruction of the plaintiff's property, which involves issues of fact for determination by a jury, there exists no reason for its escape from answering in damages that would not equally avail in case of any other breach of contract."

Affirmed.

Faircloth, C. J. and Furches, J., dissent.