..WALDEN, Judge.
Defendants are in the termite exterminating business. Plaintiff sued them charging negligence on their part and breach of contract in failing to detect termites in a house purchased by plaintiff. The case was tried to a jury on the negligence counts and resulted in a verdict for plaintiff and against defendants in the sum of $4,070.00. Plaintiff had claimed damages of $6,743.93. The trial judge set the verdict aside and granted defendants’ motion for directed verdict under R.C.P. 1.480, 30 F.S.A. Plaintiff appeals. We reverse and reinstate the verdict.
The negligence of defendants is not disputed. The essential question before us on appeal is the sufficiency of the evidence as to damages. The guideline to be used in this instance is well known. The evidence must be considered in the light most favorable to the plaintiff and every reasonable intendment and inference must be indulged in plaintiff’s favor. See Hendricks v. Dailey, Fla. 1968, 208 So.2d 101.
There was a mass of evidence produced at trial and we shall undertake to extract only a part to demonstrate plaintiff’s entitlement to damages.
Plaintiff contracted to purchase a house. The seller agreed to furnish a statement by a termite company showing whether “there *442 is any active, live termite infestation” and the seller would eliminate the infestation and repair termite damage at his expense. The defendants made an inspection and reported that on March 27, 1957, they treated the premises for “subterranean termites” and issued a termite guaranty. Further, the defendants stated, “on April 26, 1967, we reinspected this property and did not find any visible evidence of active termite infestation in the substructure of the building.” In reliance, plaintiff closed the purchase and obtained financing.
In May 1967 plaintiff contracted for and began certain remodeling at a price of $4,784.00. It was then revealed that there were four separate heavy infestations of live, active termites. The colonies had spread from the floor level up into the walls of the house. Defendants were contacted and refused to examine the premises or acknowledge the existence of the termites. Another termite company was engaged and it found additional heavy infestations of termites in the sub-floor.
The remodeling uncovered the need for and resulted in the replacement of termite damaged boards. The cost of remodeling was increased by the sum of $5,687.75, the additional sum being attributable to the repair of termite damage. The live infestations were then treated at a total cost of $270.00. Then there was testimony as to damages incurred in obtaining new financing as a consequence of the termite situation.
The trial judge’s order[1] recognized that it was defendants’ duty to report termite infestations regardless of kind which were found at the time of their inspection for subterranean termites. He further found that defendants were negligent in making the inspection of April 26, 1967, in failing to find an infestation of drywood termites. However, as we read it, the basic reason for the overturn of the verdict is his dissatisfaction with the certainty of the proofs — the failure of plaintiff to distinguish between damage made by drywood termites and damage made by subterranean *443 termites. The posture stems from the trial court decision that there was no evidence of any subterranean termites after March 1957.
There is testimony in the record, though, that subterranean termites were active in the house subsequent to March of 1957. Mr. Graham, the contractor for the remodeling, testified when asked where the live termites he observed in May 1967 when he began construction were located, answered:
“A. The flooring in that area.
“Q. By the way, do you have any idea what kind of termites they were ?
“A. I would say they were subterranean.”
His testimony was contradicted by other witnesses, but the jury had the right to believe from this that the damage was due to subterranean termites. Therefore, division of damages according to the type of termite would not have been necessary.
The plaintiff proved his amount of damages by computing the difference between his original estimate for the remodeling and the final cost. The increase in cost, according to the testimony of the contractor, was entirely attributable to the deteriorated condition of the wooden structure due to termites.
As to the matter of how certain the calculation of damages must be, the case of McCall v. Sherbill, Fla. 1953, 68 So.2d 362, furnishes light. In that case there was a jury verdict for the plaintiff for breach of an oral agreement to haul watermelons. The amount of damages was fixed by the plaintiff’s testimony as to an approximate number of loads of watermelons hauled. The trial court, on defendant’s motion, upset the verdict and ordered a new trial on damages on the basis that the evidence on damages was “so uncertain, speculative, remote, contingent and inconclusive as not to support or justify the verdict. * * * ”
The Supreme Court reversed that order, saying at p. 364:
“There are many types of cases in which the damages may be certain, but the amount of damage may be uncertain. However, such uncertainty will not necessarily preclude recovery.
“The instant case did not involve future damages or loss of future earnings but it involved the sole question of the amount of actual damages already sustained. In the case of Rynveld v. Dupuis, 5 Cir., 39 F.2d 399, the Court held that damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient that there be a reasonable basis of computation although the result may be only approximate.
“There is a clear distinction between the measure of proof necessary to establish the fact that plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix .the amount of damages. 15 Am.Jur. 414, sec. 23. In this case we are not concerned with the question of whether or not there was damage. That question has been settled by the verdict of the jury and approved by the Circuit Judge.”
We feel that the proof of damages, although not precise, was sufficient to support the jury verdict especially in light of the fact that the plaintiff presented proof of damages of $6,743.93 and received a verdict of only $4,070.00.
Furthermore, if the defendants had not been negligent in their inspection, the infestations of all types would have been discovered and the seller of the house, as provided by the contract of sale, would have had to make all repairs due to termite damage. Thus, except for the defendants’ negligence in inspection, the plaintiff would not have incurred the expense of repairing both the drywood and subterranean termite damage. Therefore, we think that it could have been believed by the jury that the defendants’ negligent inspection was *444 the proximate cause of all of the plaintiff’s additional expense incurred in remodeling.
The evidence also discloses that there was a drywood infestation as of March 27, 1957, known to defendants which was not included in defendants’ report and proposal to the then owner. Defendants assumed the existing drywood infestation was eliminated by the limited subterranean chemical barrier treatment, although plaintiff’s expert testified that drywood termites cannot be eliminated except through fumigation. It is a reasonable inference that the dry-wood termite infestation was in continuous active operation since 1957 and never reported at any time by the defendants, although they knew that their duty was to report any type of infestation discovered in the annual inspections.
There was then the overwhelming proof of extensive active infestations in 1967, previously noted. We believe the jury could have fairly inferred from the defendants’ own admissions that they were negligent in their initial inspection, report and treatment of 1957, and each inspection since then, in failing to detect or report the continuous presence of active termite infestations of some type.
 Once a person has exhausted all defenses he may have and is deemed negligent, he is liable for all the damages proximately caused by his negligence, whether or not they were anticipated or contemplated as a probable result of his act or omission. Mansfield v. Brigham, 1926, 91 Fla. 109, 107 So. 336. He is even liable for damages which are partly the result of other causes if it can be said that the other cause alone would not have been sufficient to produce the injury. De La Concha v. Pinero, Fla.1958, 104 So.2d 25. The defendants were well aware of the pre-exist-ing subterranean termite damage, and we feel the jury could also have fairly inferred that this ten years of continuous termite activity, which would have been stopped but for defendants’ negligence in failing to report its existence, concurred with the pre-existing damage caused by the subterranean termites to produce the end result of structural unsoundness.
For the above reasons we reverse and remand with instructions to reinstate the jury’s verdict and enter judgment for plaintiff accordingly.
Reversed and remanded.
OWEN, J., and LaMOTTE, STEWART F., Jr., Associate Judge, concur.

. “ * * * Defendants and Plaintiffs predecessor in title entered into a termite service policy in March of 1957 by the terms of which Defendant was to make annual inspections and treatment of Plaintiff’s property for subterranean termites. Testimony in the case shows that at the time the parties entered into said contract there was extensive damage to the property from a subterranean termite infestation. The testimony also shows that Defendants considered it their duty to report to the owner of the property any drywood termite infestation which they found at the time of their annual inspection for subterranean termites. On April 26, 1967, in response to a request from Winter Park Federal Saving's and Loan Association, Defendants wrote a • letter which stated that they had inspected the property for termites and there was no visible evidence of active termite infestation in the substructure of the building. There was no testimony that there ever was any subterranean termites in the subject building after March of 1957. There is testimony from which the jury could find that Defendant was negligent in making the inspection of April 26, 1967, in failing to find an infestation of drywood termites in the property. The testimony as to damages shows that immediately after Plaintiff purchased the subject building, he contracted to remodel the premises. When the contractor removed certain walls and flooring, termite damage both old and new was discovered. There is testimony as to what additional monies were expended by the Plaintiff to repair the termite damage. No effort was made by Plaintiff to distinguish between damage caused by subterranean termites and the drywood termites. It is clear from the evidence that Defendant is not responsible for damage caused by subterranean termites since the damage was all prior to March of 1957. It is clear from the testimony and evidence in the case, that damage caused by the two types of termites is clearly distinguishable each from the other. Plaintiff was in a position to determine what damage was caused by Defendants negligence. Since all of the damage was lumped together in the testimony of Plaintiff and since it is clear from the evidence that Defendant is not responsible for a substantial portion of the said damage, and since the burden of proof of his damages rests upon Plaintiff, the Court finds that there is no evidence from which the jury could lawfully assess Plaintiff’s damages.”