WILTON R. JOHNSON AND WIFE, INGELBERGE R. JOHNSON v. GREG WALL
AND TERMINIX SERVICE II, INC.

No. 7710SC982

(Filed 7 November 1978)

**1. Contracts § 14— third party beneficiary**

Where a contract between two parties is entered into for the benefit of a third party, the law implies privity of contract, and the third party may maintain an action for its breach or in tort if he has been injured as a result of its negligent performance.

**2. Contracts § 15; Vendor and Purchaser § 12— wood infestation report—liability of exterminating company to purchaser of house**

An exterminating company is liable to purchasers who bought a house in reliance upon a false or inaccurate wood infestation report provided by the exterminating company to the vendor where the inspection contract was entered into for the benefit of the purchasers, and the exterminating company was aware that the report would be provided to potential purchasers and that purchasers might rely on such report.

**3. Negligence § 29.1; Vendor and Purchaser § 12— inspection of house for termite damage—negligence in report**

Plaintiffs' evidence was sufficient for submission to the jury on the issue of negligence by defendant exterminating company in failing accurately to report the findings of an inspection of a house for termites and termite damage where it tended to show that the house had substantial termite damage which resulted in structural weakness at the time of the inspection, but that defendant's report contained a statement that there was no evidence of prior infestation of termites or other wood-boring insects and another statement that, although there was old damage throughout the house, there was no structural weakness. Furthermore, plaintiffs' evidence was sufficient to show that defendant's negligence was a proximate cause of their damages where it tended to show that plaintiffs relied on the report in purchasing the inspected house.

**4. Negligence § 35.3; Vendor and Purchaser § 12— contributory negligence— house purchasers—failure to discover termite damage**

The purchasers of a house were not contributorily negligent as a matter of law in failing to discover termites where their evidence showed that they were aware that there might be some termite damage and required the vendor to submit a negative termite inspection report as a condition of the purchase, and that the inspection report submitted by defendant exterminating company was subject to the reasonable interpretation that there was no prior or present infestation by termites or other wood-boring insects but that there was some other inconsequential damage to the house.

Johnson v. Wall

APPEAL by plaintiffs from *Godwin, Judge.* Judgment entered 18 July 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 31 August 1978.

Plaintiffs seek to recover as damages the costs of repairing a home which they purchased for $40,000 from Lewis Murray, alleging that in July 1974 they contracted to buy the house upon the condition that Murray submit a negative termite report, that defendant Wall, employed as a supervisor by the defendant Terminix, inspected the premises and made a report to Terminix, which submitted a negative infestation report to Murray who transmitted the report to plaintiff, that plaintiffs relied on the report (Complaint Exhibit A), purchased the home, and then found extensive structural damage to the house resulting from termite infestation, and that the reasonable cost of repairing the damage is $28,990.

In their answer defendants admitted making a termite inspection and submitting the report (Complaint Exhibit A), as requested by owner Murray, but otherwise made a general denial, and pled contributory negligence by plaintiffs.

At trial, plaintiffs' evidence tended to show that before purchasing the house plaintiffs inspected it three times and observed in the basement a sagging center beam supported by three jacks, new timbers nailed to some of the girders, and silver paint on the basement ceiling, but they observed no termite damage. They did not go into the crawl space under the house where termite damage was clearly visible. Because of the conditions observed, plaintiffs wanted assurance that there was no termite damage, and therefore required as a condition of the purchase contract that Murray furnish a negative termite report at the closing of the transaction.

It was stipulated that defendant Greg Wall, supervisor for defendant Terminix Service II, Inc., inspected the house for Murray on about 30 November 1972, and submitted a written report; and that on 2 August 1974 he inspected the premises and submitted the Wood Infestation Report, identified as Complaint Exhibit "A" and introduced in evidence. The Report was a printed form, with blanks filled in by typewriter. The body of the Report con-

Johnson v. Wall

sisted of eight numbered statements followed by two block spaces, one under "YES" and one under "NO". The four statements relevant to the case at hand were answered by a typed "x" in the appropriate block space, indicating a "NO" answer to the following:

Check One

YES	NO

1. There is active infestation of:	(A) Termites .................................. .............		☐ ☒
(B) Other wood destroying insects ... ...................................		☐ ☒

2. There is evidence of a previous infestation of: (A) Termites ...... ...................................		☐ ☒
(B) Other wood destroying insects ..................		☐ ☒

3. There is evidence of conditions conducive to infestation (earth-wood contact, faulty grades, insufficient ventilation, etc.) If yes, describe on reverse side of form ..................................		☐ ☒

4. There is evidence of damage to structural items (columns, girders, sills, joists, plates, headers, stairs, porch supports, rafters, etc.) If yes, describe on reverse side of form ........................		☒ ☒

But the typed "x" in the "NO" space following statement 4 above was marked over with a handwritten scrawl and a handwritten "x" appeared in the "YES" space. On the reverse side of the form was the following:

"Item #4. Old damage throughout the house which has been replaced in areas and it is my personal opinion that there is no structural weakness."

The Report was signed by Clyde W. Canup, local manager of defendant Terminix.

The Report was submitted by Murray to plaintiffs at the transaction closing. They relied on the Report and purchased the house. After purchasing the house the plaintiffs discovered termite damage while installing an exhaust fan in the kitchen wall. Mr. Canup, of defendant Terminix, came to their house at their request, was shown the Report, and he stated there was a typographical error and that Terminix would take corrective action if the house was then infested. There was no present infestation. A meeting was arranged between plaintiffs, Mr. Canup of Terminix, and the Pest Control Division of the Department of Agriculture. Terminix denied liability and the Pest Control Division recommended that the plaintiffs seek legal counsel.

A building contractor examined the house and estimated it would cost $12,094.68 to repair the damage to the house resulting from prior termite infestation.

The defendants' evidence, presented at trial, tended to show that defendants first inspected the house for Murray in November 1972 and prepared a grid map showing extensive termite damage throughout the house. After making some repairs, Murray put the house under contract with defendant Terminix.

Defendant Wall, supervisor for Terminix, inspected the house at Murray's request on 2 August 1974 and reported by radio to a secretary of Terminix that the termite damage was the same as found in the 1972 inspection and there was no present infestation. He did not make the pen and ink changes in the "YES" and "NO" spaces following Item No. 4, and did not report to the secretary the words that appear on the back of the Report, but he later told Canup there were no structural weaknesses.

A building contractor estimated that the cost of repairing the termite damage was $4,111.42.

At the close of plaintiffs' evidence, defendants moved for a directed verdict on the grounds that plaintiffs had failed to offer evidence of (1) a contractual relationship between plaintiffs and defendants, (2) a legal duty owed by defendants to plaintiffs, (3) negligence of defendants proximately causing damage, and (4) plaintiffs' own evidence established contributory negligence as a matter of law. The motion was denied, but was again made at the close of all the evidence. The trial court allowed the motion, and plaintiffs appeal from the judgment.

*Kimzey & Smith by James M. Kimzey for plaintiff appellants.*

*Teague, Johnson, Patterson, Dilthey & Clay by Ronald C. Dilthey; Manning, Fulton & Skinner by John B. McMillan for defendant appellees.*

CLARK, Judge.

The trial court did not specify which one or more of the four grounds set forth by the defendants were accepted in granting the directed verdict. Because any one of the grounds would sup-

port the granting of the defendants' motion, we must consider all of them in order to determine whether the directed verdict was properly granted.

Plaintiffs first contend that the defendants owed a duty to the plaintiffs to exercise due care in inspecting for termite damage and in reporting the results of the inspection, and that therefore, the directed verdict could not be properly granted on the basis that there was no duty. Defendants contend that the directed verdict was properly granted because such a duty arises only through a contractual relationship, and the parties here were not in privity of contract.

[1] It is well settled in North Carolina that where a contract between two parties is entered into for the benefit of a third party, the latter may maintain an action for its breach or in tort if he has been injured as a result of its negligent performance. *Toone v. Adams*, 262 N.C. 403, 137 S.E. 2d 132 (1964); *C. F. Industries v. Transcontinental Gas Pipe Line*, 448 F. Supp. 475 (W.D. N.C. 1978). If the third party is an intended beneficiary, the law implies privity of contract. *Calder v. Richardson*, 11 F. Supp. 948 (S.D. Fla. 1935), *aff'd*, 118 F. 2d 249 (1941). *See, Pickelsimer v. Pickelsimer*, 257 N.C. 696, 127 S.E. 2d 557 (1962). The question of whether a contract was intended for the benefit of a third party is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the provisions of the contract, construed in light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish. 17 Am. Jur. 2d Contracts § 304.

[2] In this case, the plaintiffs' contract with the vendor provided that the vendor would obtain a wood infestation report. The clear intent of the vendor, in contracting with the defendants, was to benefit the plaintiffs. Although the plaintiffs never dealt directly with the defendants, the testimony of defendant Wall tended to show that the defendants were aware that the vendor would provide the report to potential purchasers and that a purchaser might rely on such a report. Since Terminix had already reported on past termite damage in 1972, and the house was thereafter under contract with defendants, the defendants should have been put on notice that the report on the status of termite damage was intended for a third person. Wall also testified that this type of

report was normally obtained by a vendor to give to prospective purchasers as a condition of the sale. The contract itself indicates that the defendants were aware that parties other than the vendor would receive the report. The contract provides:

> "I hereby certify that neither I nor the company for whom I am acting has had, presently have or contemplate having any interest in the property involved. I do further certify that neither I nor the company for whom I am acting is associated in any way with any party to this transaction."

Although the contract does not specifically state that the plaintiffs were the intended beneficiaries of the contract, it is sufficient that the contract was evidently made for the benefit of third persons. *See,* 17 Am. Jur. 2d, Contracts, § 304. Since defendants had provided the vendor with a grid map of existing termite damage in 1972, and since the contract was not an agreement to *treat* the home, the benefit to the vendor was minimal. He was already fully aware of the damage. The vendor's status could not be altered by the report submitted in 1974. See *Foreman v. Jordan,* 131 So. 2d 796 (La. Ct. App. 1961). Therefore, it seems clear that the benefit to the vendor was small in comparison to the benefit to be gained by the plaintiffs.

There are several cases from other jurisdictions which have held that an exterminating company is liable to a plaintiff who purchases property in reliance upon a false or inaccurate wood infestation report provided to the vendor. *See, Hardy v. Carmichael,* 207 Cal. App. 2d 218, 24 Cal. Rptr. 475 (1962); *Wice v. Shilling,* 124 Cal. App. 2d 735, 269 P. 2d 231 (1954); *Hamilton v. Walker Chemical & Exterminating Co.,* 233 So. 2d 440 (Fla. Ct. App. 1970); *Ruehmkorf v. McCartney,* 121 So. 2d 757 (La. Ct. App. 1960).

A similar rule has been applied in cases where a title abstract company negligently prepares an abstract and a purchaser relies on the report. The abstracter is generally held liable if he was aware that the report would be provided to persons other than the vendor who contracted for the abstract. 1 Am. Jur. 2d, Abstracts of Title, § 16. In *Williams v. Polgar,* 391 Mich. 6, 215 N.W. 2d 149 (1974), the court held that an abstracter was liable to a third party who relied on an inaccurate report if the existence of the third party was reasonably foreseeable. The

court noted that the bounds of duty are constantly enlarged by the knowledge of a prospective use. For an analysis of the rules regarding the liability of abstract companies to third parties, *see Williams, supra,* app. A, B; Annot., 34 A.L.R. 3d 1122 §§ 5, 6(b) (1970); Annot., 68 A.L.R. 375, 376 (1930); *see,* Annot., 35 A.L.R. 3d 504, § 4(a) (1971) (liability of surveyor to third party who relies on inaccurate survey).

In North Carolina there are no cases in which a purchaser has sought to recover from an exterminating company who provided a false or inaccurate infestation report. But in *Gorrell v. Water Supply Co.,* 124 N.C. 328, 32 S.E. 720 (1899), it was held that a third party could recover for the negligent breach of a contract between a water company and a municipality. The company had negligently failed to supply water to the city and, as a result, plaintiff's home was destroyed by fire. The Court noted that "the object [of the contract] is the comfort, ease and security from fire. . . . The benefit to the nominal contracting party . . . is small in comparison." 124 N.C. at 333, 32 S.E. at 721.

There was ample evidence presented by the plaintiffs which tended to show that the contract between the vendor and the defendants was entered into for the benefit of the plaintiffs, and that the defendants were aware that potential purchasers would receive the report. There was sufficient evidence presented to overcome defendants' motion for directed verdict on the grounds that the defendants owed no duty to the plaintiffs.

[3] The second ground asserted in defendants' motion for directed verdict is that there was insufficient evidence of defendants' negligence as a matter of law. *See, Prevatte v. Cabble,* 24 N.C. App. 524, 211 S.E. 2d 528 (1975). In determining whether the evidence is sufficient, the plaintiff's evidence must be taken as the truth and considered in the light most favorable to him. *Manganello v. Permastone, Inc.,* 291 N.C. 666, 231 S.E. 2d 678 (1977); *Brooks v. Boucher,* 22 N.C. App. 676, 207 S.E. 2d 282, *cert. denied,* 286 N.C. 211, 209 S.E. 2d 319 (1974). The evidence presented by the plaintiffs tended to show that the report which the plaintiffs received did not accurately reflect the findings made by Wall. Although finding number four on the report was changed to indicate that there was some structural damage, the second finding was not altered. Finding number two stated that

Johnson v. Wall

there was no evidence of prior infestation of termites or other wood destroying evidence. On the back of the report is a notation supplementing statement 4 that, in the inspector's opinion, "there is no structural weakness." There was overwhelming evidence presented by plaintiffs which shows that the home had substantial termite damage which resulted in structural weakness at the time of the inspection. Plaintiffs presented sufficient evidence to show that the defendants negligently failed to accurately report their findings. The granting of a directed verdict in favor of the defendants cannot be supported on the ground that there was insufficient evidence of negligence as a matter of law.

Nor can the directed verdict be supported on the ground that the plaintiffs failed to establish proximate cause. Defendants contend that the plaintiffs inspected the home themselves and relied solely upon the representations of the vendor and the real estate agent. The plaintiff, Wilton Johnson, testified that he observed some sagging beams in the basement and so requested a termite report. He testified that he had relied upon the report. Taking the plaintiffs' evidence as the truth and considering it in the light most favorable to them, there was sufficient evidence to establish the plaintiffs' reliance on the report.

[4] The final ground asserted by defendants in support of their motion for directed verdict was that the plaintiffs were contributorily negligent as a matter of law. A directed verdict on the ground of contributory negligence is proper only when the plaintiff's evidence so clearly establishes the defense of contributory negligence that no other conclusion can reasonably be drawn. *Naylor v. Naylor*, 11 N.C. App. 384, 181 S.E. 2d 222 (1971). Defendants cite several cases which hold that a purchaser may not rely upon misrepresentations by a vendor without making his own independent investigation of the premises to support their contention that the plaintiffs cannot rely on misrepresentations by third parties. It is a well-settled rule that a purchaser is contributorily negligent if he relies on statements by a vendor as to the physical condition of property. *Calloway v. Wyatt*, 246 N.C. 129, 97 S.E. 2d 881 (1957); *Harding v. Southern Loan & Insurance Co.*, 218 N.C. 129, 10 S.E. 2d 599 (1940); *Goff v. Frank Ward Realty & Insurance Co.*, 21 N.C. App. 25, 203 S.E. 2d 65, *cert. denied* 285 N.C. 373, 205 S.E. 2d 97 (1974); *see, Davis v. Dunn*, 58 So. 2d 539 (Fla. Sup. Ct. 1952). In the case *sub judice*, the plaintiffs did not rely on the ven-

dor's statments but obtained an independent examination of the premises by a neutral third party. The cases cited by defendants require a purchaser to make an independent check of the premises and this is precisely what the plaintiffs did.

Defendants also contend that the plaintiffs' own evidence establishes that they were put on notice that the house was structurally damaged and that therefore the plaintiffs were contributorily negligent as a matter of law. The plaintiffs' evidence, taken in the light most favorable to them, shows that they were aware that there was, or might be, damage and as a result they required a negative termite inspection report. The report, although confusing, can reasonably be interpreted to mean that there was no prior or present infestation by termites or other wood-boring insects, but that there was some other inconsequential damage to the house. Considering the evidence in the light most favorable to the plaintiffs, the defendants have failed to show contributory negligence as a matter of law.

The granting of defendants' motion for directed verdict cannot be supported by any of the grounds set forth by the defendants.

Reversed and remanded.

Judges PARKER and ERWIN concur.