MARY LEONA JONES v. OTIS ELEVATOR COMPANY, a CORPORATION.

(Filed 21 November, 1951.)

1. Contracts § 19: Negligence § 1—

   In order for a person injured in a fall down an elevator shaft to recover against the company under contractual duty to the owner of the building to keep the safety devices on the elevator in reasonably safe condition and in proper repair, the injured person must show a negligent breach of the legal duty arising out of the contract and that such breach of duty was the proximate cause or one of the proximate causes of the injury.

2. Courts § 15—

   The laws of the state in which plaintiff's injury occurred governs the substantive rights of the parties in an action for negligence.

3. Negligence § 3½—

   The doctrine of *res ipsa loquitur* does not apply in the State of Virginia to a case of an unexplained accident which may be attributable to one of several causes, some of which are not under the control of the defendant.

4. Negligence § 19b (2)—Res ipsa loquitur held not applicable in this action to recover for fall down elevator shaft.

   Plaintiff was injured in a fall down an elevator shaft in a building in the State of Virginia. Plaintiff sued the company which was under con-

tinuing contractual obligation to the building owner to keep the elevator in repair. Plaintiff's evidence affirmatively showed that defendant was not liable for the alleged poor lighting, and while plaintiff's evidence tended to show that the elevator cage was not at the floor where plaintiff entered the shaft through the open door, plaintiff's evidence failed to show that at the time it was impossible to open the door when the elevator cage was not at that floor. *Held:* Since the evidence does not show that the safety device preventing the opening of a door at a floor unless the elevator cage was at such floor, was not working at that time, the doctrine of *res ipsa loquitur* does not apply under the laws of the State of Virginia and nonsuit was proper.

APPEAL by plaintiff from *Stevens, J.,* February Term, 1951, of LENOIR.

This case was heard on demurrer at the Fall Term, 1949, and reported in 231 N.C. 285, 56 S.E. 2d 684. An examination of that opinion may give a more complete understanding of the facts herein stated.

The plaintiff, Mary Leona Jones, now Mrs. Holland, Doris Fulghum, now Mrs. Hoffman, and Doris Blackman, now Mrs. Epps, all of whom will be referred to hereinafter by their respective married names, were student nurses in training at Goldsboro Hospital, Goldsboro, North Carolina, in December, 1947. They were sent by the Goldsboro Hospital, 1 January, 1948, to the Medical College of Virginia, Hospital Division, Richmond, Virginia, as affiliate nurses where they were to take special training for a period of three months.

When these student nurses arrived at the hospital in Richmond, they reported to the house mother, a Mrs. Rhodes. Mrs. Rhodes took them to the quarters they were to occupy on the third floor of a building known as Memorial Hall where fourteen nurses were quartered. She instructed them how to use the elevator in the building which had three floors and a basement. The elevator served all four floors.

According to the evidence, the elevator was not a modern, automatic, pushbutton type. If you were in the basement of the building and wanted the elevator, you had to go to the floor where it was located and bring it down or holler to someone to do so. There were no signals or indicators to show where it was at any particular time. It was an "old-timey" elevator and had to be operated by manipulating a lever on the inside of the cage. The cage or carriage was not equipped with a door. Entrance to the elevator on each floor was obtained by sliding open a large wooden panel door.

According to the defendant's answer, a portion of which was introduced in evidence by the plaintiff, "It was a conventional type electrically-operated elevator, equipped with various safety devices, including electro-mechanical bar locks on the shaftway doors, which said locks can only be opened from the inside of the elevator shaft; that on each floor of said building there are shaftway doors which are in two sections, one station-

ary and one movable and that when any of said doors are open, the electric contact is broken and the elevator carriage or cage cannot be moved, except by using the switch on the control panel in the machine room located in the basement of said building. That said machine room was kept closed and locked except when opened by an authorized representative of the defendant."

The evidence further tends to show that the student nurses used the elevator whenever it was available. This plaintiff, and the other witnesses who used it prior to this occasion, testified they had always found the elevator cage at the floor where the door to the shaftway was open; that the hall where the elevator shaft is located, just off the main hall, was equipped with sufficient lights when burning. On the occasion complained of the light was only sufficient to see the elevator dimly. There was a light on the facing of the elevator door which could have been turned on. There was a sign on the facing of the elevator entrance on the third floor which read: "Use this elevator at your own risk." The plaintiff was familiar with the elevator; she and Mrs. Hoffman and Mrs. Epps used it three or four times a day.

As one approached the elevator, the light inside the car could be turned on before entering it, but the nurses, including the plaintiff, usually stepped into it in the dark and cut on the light after entering.

Mrs. Epps testified there was a wire screen in both of the upper panels of the door to the elevator on the third floor. "It did have a hole in it . . . I noticed that the first day I was there. There was no change in that condition between that time and the time of the accident . . . I didn't put my hand in there and open the door. I was tall enough, but I didn't. Miss Jones (Mrs. Holland) is about the same height I am." This witness further testified, "We didn't like to walk and we wanted to use the elevator as often as we could. Everybody turned the lights out so nobody else would see the elevator was up there and use it. We turned the lights out so people couldn't see the elevator was there and then when we came to use the elevator we stepped right in without putting a light on. You couldn't get the elevator unless you were on the floor the elevator was at. I don't know whether, if the door was closed, you couldn't get it on that floor and couldn't open the door except from the outside unless you put your hand in that screen and opened that door. When we got in the elevator and came to our floor, or any floor, we would leave it there, and if we left the door open the elevator had to stay there so . . . you could go back down in it so nobody else could get it unless they came for it. If you didn't turn out the lights people could see the carriage was there." On the night of 28 March, 1948, about 7:00 o'clock, the plaintiff and Mrs. Epps walked up the stairway in Memorial Hall and went to the room occupied by Mrs. Holland and Mrs. Hoffman. Mrs. Hoffman was

in the room. After a few minutes the three of them started to leave the building. They started to walk down when Mrs. Holland, who was nearest the elevator, said: "Girls, the elevator is here. Let's ride down." They turned to go to the elevator. The door was partly open and Mrs. Holland pushed it the rest of the way open, stepped in and fell to the basement. She was seriously and permanently injured. At the time of the trial below she had no recollection of the conditions as they existed at the time she fell.

The plaintiff introduced that portion of the defendant's answer which admitted the defendant had been under contract with the Medical College of Virginia since 26 June, 1945, to maintain and regularly inspect the elevator involved herein, and that portion which described its type and equipment, the pertinent parts of which have been included in the statement of the case.

The defendant moved for judgment of nonsuit at the close of the plaintiff's evidence and the motion was allowed. From the judgment entered, the plaintiff appeals and assigns error.

*Jones, Reed & Griffin for plaintiff, appellant.*
*Whitaker & Jeffress for defendant, appellee.*

DENNY, J. This is not an ordinary tort action. The liability of the defendant, if any, must flow from the negligent breach of its contract with the Medical College of Virginia. This was pointed out in the former opinion referred to herein (231 N.C. 285, 56 S.E. 2d 684). See also 12 Am. Jur. 820, *et seq.;* 38 Am. Jur. 664, 45 C.J. 650; *Standard Oil Co. v. Wakefield,* 102 Va. 824, 47 S.E. 830, 66 L.R.A. 792; *American Oil Co. v. Nicholas,* 156 Va. 1, 157 S.E. 754.

It is admitted that at the time of plaintiff's injury the defendant was under contract with the Medical College of Virginia to maintain some twenty elevators in buildings owned or controlled by the Medical College of Virginia, including the one in Memorial Hall. The defendant, however, under the terms of its contract, which is attached to and made a part of the plaintiff's complaint, expressly excluded therefrom the repair and maintenance of hoistway enclosures and hoistway doors, and door hangers on the passenger elevator in Memorial Hall.

The plaintiff alleges in her complaint, among other things, (1) that the defendant unlawfully, wrongfully, and negligently, failed to maintain lights on each floor of Memorial Hall at the point where the elevator well was located, and particularly on the third floor of the building; and (2) that the defendant unlawfully, and wrongfully violated its contract with the Medical College of Virginia in that it failed to maintain the elevator and the door closures and the electric interlocks attached thereto

in proper repair so as to prevent one from opening the door to the elevator well when the cage or carriage was not at that floor.

We find nothing in the contract between the defendant and the Medical College of Virginia that required or permitted the defendant to have any control or supervision over the hallways of Memorial Hall, or the lighting facilities therein. And the plaintiff offered no evidence in support of her allegations in this respect. Moreover, there was evidence in the trial below to the effect that ample facilities had been provided for adequate light, but that the plaintiff and Mrs. Hoffman and Mrs. Epps made it a practice to turn out the light near the elevator entrance and the light in the elevator in order that no other person on the hall would observe its presence. Mrs. Epps testified, "We turned the lights out so people couldn't see the elevator was there and when we came to use the elevator we stepped right in without putting a light on."

As we construe the allegations of the complaint in the light of the status existing between the plaintiff and defendant, the defendant was not guilty of actionable negligence unless it negligently breached the legal duty arising out of its contract relation with the Medical College of Virginia to exercise care to keep the safety devices on the elevator in a reasonably safe condition and in proper repair, and such negligent breach of duty was the proximate cause, or one of the proximate causes, of plaintiff's injury.

The plaintiff is relying on the doctrine of *res ipsa loquitur,* citing *Haag v. Harris,* 4 Cal. 2d 108, 48 Pac. 2d 1; *Gustavson v. Thomas,* 227 App. Div. 303, 237 N.Y.S. 479; *Class v. Y.W.C.A.,* 47 Ohio App. 128, 191 N.E. 102; *Cramer v. Mergard,* 56 Ohio App. 493, 11 N.E. 2d 108; *Moohr v. Victoria Inv. Co.,* 144 Wash. 387, 258 Pac. 43. These cases, however, involved automatic elevators and are not controlling upon a factual situation such as that before us.

The plaintiff sustained her injuries in the State of Virginia and the substantive rights of the parties are governed by the law of that State. *Charnock v. Taylor,* 223 N.C. 360, 26 S.E. 2d 911, 148 A.L.R. 1126.

In the case of *Peters v. Lynchburg Light & Traction Co.,* 108 Va. 333, 61 S.E. 745, 22 L.R.A. (N.S.) 1188, in applying the doctrine of *res ipsa loquitur,* the Court stated: "The doctrine rests upon the assumption that the thing which causes the injury is under the exclusive management of the defendant, and the evidence of the true cause of the accident is accessible to the defendant and inaccessible to the person injured. *Ross v. Double Shoals Cotton Mills,* 140 N.C. 115, 52 S.E. 121, 1 L.R.A. (N.S.) 298."

In *City of Richmond v. Hood Rubber Products Co.,* 168 Va. 11, 190 S.E. 95, in considering the question of *res ipsa loquitur,* the Court said: "In Virginia the doctrine, if not entirely abolished, has been limited and

restricted to a very material extent. See *Chesapeake & O. Ry. v. Tanner,* 165 Va. 406, 182 S.E. 239, and *Virginia Electric & Power Co. v. Lowry,* 166 Va. 207, 184 S.E. 177."

It was held in *Arnold v. Wood,* 173 Va. 18, 3 S.E. 2d 374, that the doctrine of *res ipsa loquitur* "does not apply in the case of an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible." *Seven-Up Bottling Co. v. Gretes,* 182 Va. 138, 27 S.E. 2d 925.

The plaintiff alleges her injuries were proximately caused by poor lighting and the failure of the defendant to keep the elevator in proper repair. As heretofore pointed out, this defendant was not responsible for the poor lighting which existed at the time of her injury. And there is no evidence tending to show any of the safety devices on this elevator were out of order other than the fact that the elevator was in the basement of the building and the hoistway door on the third floor was partly open. But the plaintiff's evidence does tend to show that it was possible to open the hoistway door on the third floor from the outside whether the elevator was at that floor or not. This is sufficient to defeat the application of the doctrine of *res ipsa loquitur.*

We deem it unnecessary to consider the question of contributory negligence on the part of the plaintiff, since in our opinion no negligent breach of the contract between the defendant and the Medical College of Virginia has been established.

The judgment of the court below is
Affirmed.