SHOFFNER INDUSTRIES, INC. PLAINTIFF v. W. B. LLOYD CONSTRUCTION COMPANY DEFENDANT v. NOEL N. COLTRANE, JR. ADDITIONAL DEFENDANT

No. 7815SC875

(Filed 17 July 1979)

1. Rules of Civil Procedure §§ 12, 56— denial of summary judgment—allowance of motion to dismiss complaint—no prejudicial error

The trial court's inconsistent ruling denying additional defendant's motion for summary judgment but allowing his Rule 12(b)(6) motion to dismiss for failure to state a claim for relief did not constitute prejudicial error.

2. Rules of Civil Procedure § 56— allowance of motion to dismiss complaint— mootness of summary judgment motion

When a court decides to dismiss an action pursuant to Rule 12(b)(6) for failure to state a claim for relief, any pending motion for summary judgment against the plaintiff may be treated as moot and therefore not to be decided.

3. Architects § 3; Contracts § 15; Negligence § 2— negligence of architect— liability to general contractor—absence of privity of contract

A third party general contractor who may foreseeably be injured or suffer an economic loss proximately caused by the negligent performance of a contractual duty by an architect has a cause of action against the architect for negligent approval of defective materials and workmanship even though there is no privity of contract.

4. Architects § 3; Contracts § 15— general contractor's action against architect— summary judgment properly denied

The trial court properly denied additional defendant architect's motion for summary judgment upon a general contractor's counterclaim to recover damages allegedly resulting from the architect's negligent approval of defective materials used in the construction of a building.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 28 July 1978 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 31 May 1979.

Plaintiff, Shoffner Industries, filed complaint alleging that defendant was indebted to it in the sum of $6,524.56 for goods and merchandise delivered by plaintiff to defendant. Defendant Lloyd filed answer denying the allegations of the complaint and counterclaiming against plaintiff and additional defendant, Coltrane. Defendant's counterclaim alleged: That Lloyd entered into contract with the Elizabeth City-Pasquotank County Board of Education to construct a facility which was to be designed by Coltrane, an architect; that construction was done under the supervi-

sion and approval of Coltrane; that construction began and certain trusses were ordered from plaintiff and delivered on site for use in the structure; that prior to erection of the trusses Coltrane, or persons acting under him, inspected and approved the trusses when he knew or should have known that they were defective as to material and workmanship; that defendant relied upon Coltrane as an expert architect and installed the trusses in a workmanlike manner; that the trusses were designed by an engineer not registered in the State of North Carolina in violation of the North Carolina Building Code; that plaintiff improperly designed and constructed the trusses from defective material; that plaintiff's negligence caused one or more of the trusses installed in the roof to collapse resulting in a "domino" effect; that Coltrane was negligent in that he gave specific approval to the trusses which later proved to be defective; that the negligence of plaintiff and Coltrane concurred with resulting damage to the defendant; that this negligence caused defendant to incur additional labor cost and materials amounting to $97,411.19.

Plaintiff filed answer to the counterclaim admitting that the trusses were inspected and approved for use in the structure but denying all other allegations of the counterclaim.

Additional defendant Coltrane filed answer alleging: That defendant's counterclaim failed to state a claim upon which relief can be granted; that he was the architect who designed the building for the Board of Education; that, on information and belief, the trusses were designed by an engineer not registered in the State of North Carolina; that Coltrane owed no legal duty to defendant Lloyd and no contractual relationship existed between them; that he performed his obligations properly and with due care and was not negligent in the performance of any legal duties. Coltrane also pled contributory negligence on the part of Lloyd. He alleged that Lloyd was cautioned by him that the proper installation of the trusses was critical to the integrity of the roof structure and that, notwithstanding this, Lloyd installed the trusses in an improper manner; that Lloyd failed to provide adequate temporary braces and dismissed his employees for a weekend before the roof had been adequately braced; that any additional expenses incurred by Lloyd as the primary contractor proximately resulted from his own negligence.

It appears from the record that defendant Lloyd instructed his superintendent to cease work on the morning of Friday, 6 May 1977 before completion of the bracing of the roof trusses and that, on the following day, the roof structure collapsed.

In addition to the allegation by additional defendant Coltrane that the counterclaim failed to state a claim upon which relief can be granted, Coltrane moved for summary judgment. Affidavits were then submitted both by Coltrane, the architect, and Lloyd, the contractor. In light of our holding to be hereinafter explained, a summary of the information disclosed by the affidavits is unnecessary.

On 28 July 1978, Judge McLelland heard the additional defendant's motion for summary judgment and, apparently, also heard the additional defendant's motion to dismiss for failure to state a claim upon which relief may be granted which was asserted in additional defendant's answer. Judge McLelland expressly denied additional defendant's motion for summary judgment but allowed his motion to dismiss for failure to state a claim upon which relief may be granted pursuant to G.S. 1A-1, Rule 12(b)(6).

Defendant Lloyd, the contractor, appealed from the granting of additional defendant's motion to dismiss for failure to state a claim upon which relief may be granted. Additional defendant, Coltrane, the architect, gave notice of conditional cross appeal as to the court's failure to grant the motion for summary judgment.

The original plaintiff, Shoffner Industries, is not involved in this appeal. The owner of the property, Elizabeth City-Pasquotank County Board of Education, is not a party to this action.

*Smith, Anderson, Blount & Mitchell, by James G. Billings and Nigle B. Barrow, Jr., for defendant appellant.*

*Allen, Allen, Walker & Washburn, by Kent Washburn, for additional defendant appellee.*

CARLTON, Judge.

[1] In light of the unusual disposition of this action by the trial court, it is first necessary that we determine the proper posture

of the case on appeal. The trial court denied the additional defendant's motion for summary judgment but allowed his motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief may be granted. We agree with the additional defendant, Coltrane, that the trial court's action was inconsistent. However, we do not find that inconsistency to constitute prejudicial error. As discussed *infra*, however, the inconsistent ruling by the trial court does affect our review of the case on appeal.

In reviewing additional defendant's contention that it is prejudicial error to first deny a motion for summary judgment and then grant a 12(b)(6) motion for failure to state a claim upon which relief may be granted, we note several distinctions between the two motions. Granted, several of them are subtle. A 12(b)(6) motion for failure to state a claim upon which relief can be granted addresses the claim itself and the moving party is simply asserting that the pleading to which the motion is directed does not sufficiently state a claim for relief. Unless the motion is converted into one for summary judgment, as permitted by the last sentence in Rule 12(b), it does not challenge the actual existence of meritorious claim. The motion only entails an examination of the sufficiency of the pleadings. By contrast, the summary judgment motion embraces more than the pleadings and the trial court may properly consider affidavits, depositions, and other information designated in the Rule. The Rule 56 motion is an assertion that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment on the merits as a matter of law on the basis of the record then existing. Obviously, the summary judgment motion may be made on the basis of the pleadings alone and, in that event, it is the same as the motion under Rule 12(b)(6). *Dyal v. Union Bag-Camp Paper Corp.*, 263 F. 2d 387 (5th Cir. 1959).

[2]  The confusion between Rule 56 and Rule 12(b)(6) motions has revolved primarily around the question whether matter outside the pleadings can be presented on a Rule 12(b)(6) motion to dismiss. The confusion resulted in a 1948 amendment to Rule 12 of the Federal Rules of Civil Procedure, upon which our rule was based, providing that when outside matter is presented to and not excluded by the court on a motion under either Rule 12(b)(6) or Rule 12(c), it should be treated as one for summary judgment

under Rule 56. The result is that the party moving for dismissal for failure to state a claim may show that, even if the complaint is sufficient on its face, undisputed facts not appearing in the complaint entitle him to a summary judgment. Moreover, the Rule 12(b)(6) motion is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint. *Beedy v. Washington Water Power Co.*, 238 F. 2d 123 (9th Cir. 1956). When a court decides to dismiss an action pursuant to Rule 12(b)(6), any pending motion for summary judgment against the claimant may be treated as moot and therefore not be decided. *Harber v. Kentucky Ridge Coal Co.*, 85 F. Supp. 233 (E. D. Ky. 1949), *aff'd on other grounds*, 188 F. 2d 62 (6th Cir. 1951); *see* Wright and Miller, Federal Practice and Procedure, Civil, § 2713, pp. 391-400.

Here, the trial court did not treat the summary judgment motion as moot. Indeed, it expressly denied the motion. Moreover, it is not clear from the record before us whether the trial court considered the affidavits in deciding the Rule 12(b)(6) motion. In light of the last sentence in Rule 12(b), we must assume that the court did exclude all matter outside the pleadings. That sentence provides that when outside matter is presented to and not excluded by the court on a motion under Rule 12(b)(6), it should be treated as one for summary judgment under Rule 56. Since the trial judge here denied the motion for summary judgment, and then allowed the motion under Rule 12(b)(6), and since outside matter is not ordinarily considered under a Rule 12(b)(6) motion, we must assume that the trial judge concluded that, as a matter of law, the defendant's counterclaim on its face failed to state a claim for which relief could be granted. For that reason, we do not review, for purposes of defendant's appeal, the affidavits or other documents, submitted in support of or opposition to the motion for summary judgment.

The result of the foregoing is this: The primary question raised on this appeal is whether the trial court properly allowed the motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The test on a motion to dismiss for failure to state a claim upon which relief can be granted is whether the pleading is legal-

ly sufficient. 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 12, p. 294. A complaint may be dismissed on motion filed under Rule 12(b)(6) if it is clearly without merit; such lack of merit may consist of an absence of law to support a claim of the sort made, absence of fact sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim. *Hodges v. Wellons*, 9 N.C. App. 152, 175 S.E. 2d 690 (1970). For the purpose of a motion to dismiss, the allegations of the complaint are treated as true. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1976). A complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are sufficient to give a defendant notice of the nature and basis of plaintiff's claim so as to enable him to answer and prepare for the trial. *Cassels v. Ford Motor Co.*, 10 N.C. App. 51, 178 S.E. 2d 12 (1970).

We now turn to the question of whether the counterclaim by the contractor, Lloyd, states a claim upon which relief may be granted against the architect, Coltrane. We hold that the motion to dismiss pursuant to Rule 12(b)(6) was improvidently entered.

[3] The primary substantive issue presented is whether a third party general contractor, who may foreseeably be injured or suffer an economic loss proximately caused by the negligent performance of a contractual duty by an architect, has a cause of action against the architect, notwithstanding absence of privity, for negligent approval of defective materials and workmanship.

In 65 A.L.R. 3d 249, 252, it is said:

Although, under the traditional general rule, privity of contract was required before a cause of action could arise from the negligent breach of a duty existing by virtue of contract, this requirement has been gradually eliminated in many jurisdictions, at first with respect to actions for personal injuries or death, and later in regard to suits predicated upon harm to intangible economic interests. Thus, just as the privity doctrine has been widely repudiated in architect cases involving personal injury or death stemming from negligently prepared plans and designs and from negligent supervision, the courts of several jurisdictions have indicated that the doctrine cannot be applied to shield an ar-

Industries, Inc. v. Construction Co.

chitect from liability to a contractor who has suffered economic damage as a result of the negligence of the architect. It has been so held with respect to causes of action arising both from negligent supervision and from the negligent preparation of plans and specifications.

We think that the evolution of related cases brings North Carolina in accord with the rules stated above. It is well settled in North Carolina that where a contract between two parties is intended for the benefit of a third party, the latter may maintain an action in contract for its breach or in tort if he has been injured as a result of its negligent performance. *Jones v. Otis Elevator Company*, 234 N.C. 512, 67 S.E. 2d 492 (1951).

The parties to a contract impose upon themselves the obligation to perform it; the law imposes upon each of them the obligation to perform it with ordinary care and they may not substitute a contractual standard for this obligation. A failure to perform a contractual obligation is never a tort unless such nonperformance is also the omission of a legal duty. (Citation omitted.) The contract merely furnishes the occasion, or creates the relationship which furnishes the occasion, for the tort. *Toone v. Adams*, 262 N.C. 403, 407, 137 S.E. 2d 132, 135 (1964).

The law imposes upon every person who enters upon an active course of conduct the positive duty to use ordinary care so as to protect others from harm. A violation of that duty is negligence. It is immaterial whether the person acts in his own behalf or under contract with another. *Council v. Dickerson's, Inc.*, 233 N.C. 472, 64 S.E. 2d 551 (1951). An act is negligent if the actor intentionally creates a situation which he knows, or should realize, is likely to cause a third person to act in such a manner as to create an unreasonable risk of harm to another. *Toone v. Adams, supra.*

The additional defendant contends primarily that the liability for negligence of an architect, as a professional, extends only to those with whom he is in privity of contract. He implicitly concedes that he would be liable to his client, the school board, for negligently prepared plans and specifications. Since he was under no contractual duty with the contractor, he argues, he should not be liable to him. We think, however, that the expansion of liability to third parties now establishes the proposition that a contrac-

tor hired by the client to construct a building, although not in privity with the architect, may recover from the architect any extra costs resulting from the architect's negligence. To hold otherwise would require that we ignore the modern concepts of tort liability first established by *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916). We cannot ignore the half century of development in negligence law originating in *MacPherson* and are impelled to conclude that the position and authority of a supervising architect are such that he ought to labor under a duty to the prime contractor to supervise the project with due care under the circumstances, even though his sole contractual relationship is with the owner. As was recognized in *United States v. Rogers & Rogers*, 161 F. Supp. 132, 136 (S. D. Cal. 1958):

> Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.

*Rogers* is a case analogous to the case at bar. There, in an action brought in the name of the United States by suppliers of labor and materials for a school construction project, the defendant contractor counterclaimed against the project architect, who had allegedly negligently interpreted certain concrete tests and had thereby approved the installation of inadequate concrete structural forms. The result was that the contractor suffered damages in compensating for the defective forms and in the consequent delay in completing the work. The court held that the negligent breach by an architect of his contract with the owner gave rise to an actionable claim, sounding in tort, in favor of a stranger to the contract, including a contractor who allegedly had been damaged by the breach. The court held that various factors must be balanced, including the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury, the moral blame attached to such conduct, and the policy of preventing future harm.

In *A. R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla. 1973), the Supreme Court of Florida held that a general contractor may maintain a direct tort action against an architect for damages proximately caused by negligence in the preparation of plans and specifications, for negligence causing delay in the preparation of corrected plans, for negligently preparing and supervising corrected plans, for negligently failing to award a certificate of completion, and for negligent supervision and control.

We adhere to the language of the Florida court:

> From the foregoing, we are satisfied that the principle is established that a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity. *Id.* at 402.

The additional defendant (architect) here attempts to distinguish the cases cited by noting that they involve *supervising* architects. He argues that, in the instant case, the contractor, not the architect, had responsibility for supervision of construction, and that the owner had the life and death power to stop the work of the contractor. However, the contractor's counterclaim here alleged that "said construction under the contract was done under the supervision and approval of the said Noel N. Coltrane." As stated above, the allegations of the complaint in a Rule 12(b)(6) motion must be treated as truth. The reviewing courts must, therefore, in the instant case, assume that the architect here was a supervising architect.

Additional defendant also relies upon the decision of our Supreme Court in *Ports Authority v. L. A. Fry Roof Company*, 294 N.C. 73, 240 S.E. 2d 345 (1978). There, the plaintiff, the North Carolina State Ports Authority, brought action against its general contractor, Dickerson, and also Dickerson's subcontractor, E. L. Scott Roofing Company. No privity of contract existed between the plaintiff and Scott. In its claim for relief against Scott, plaintiff set forth allegations of negligence, contending that Scott was negligent in the construction of certain roofing materials. In its answer, Scott moved to dismiss, contending that allegations of the complaint failed to state a claim upon which relief could be

granted. Scott's motion to dismiss was allowed, the Court stating as follows:

> There was also no error in dismissing the action against Scott. Scott asserted in its answer the defense that the complaint fails to state a claim upon which relief may be granted against it. In this, Scott was correct. Although the complaint states that the plaintiff seeks recovery against Scott "in tort for the negligent installation of the roofs on these two buildings," it alleges that the defendant Scott was the roofing subcontractor of Dickerson, the general contractor, and that Scott failed properly to apply the roofing material, in consequence of which failure the roofs leaked. This is simply an allegation that Scott did not properly perform its contract with Dickerson and, for the reasons above set forth, does not allege a cause of action in tort in favor of the plaintiff against Scott. *Id.* at 294 N.C. 87, 240 S.E. 2d 353.

We think that *Ports Authority* is clearly distinguishable from the case at bar and from the cases cited above. There, the plaintiff attempted to sue the subcontractor for breach of its contract with the contractor. The Supreme Court held that the pleadings did not allege a cause of action in tort in favor of plaintiff against the subcontractor. The Court stated, however, the rule that a promisor may be liable in a tort action for personal injury or damage to property proximately caused by his negligent, or willful, act or omission in the course of the performance of his contract when the injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promissee. The Court reiterated the principles enunciated by *Council v. Dickerson, supra,* and other cases cited above. We reject additional defendant's contention that *Ports Authority* overrules the well settled North Carolina rule that where a contract between two parties is intended for the benefit of a third party, the latter may maintain an action in tort if he has been injured as a result of its negligent performance. Moreover, the following is well established in North Carolina:

> One who engages in a business, occupation or profession represents to those who deal with him in that capacity that he possesses the knowledge, skill, and ability, with reference

to matters relating to such calling which others engaged therein ordinarily possess. He also represents that he will exercise reasonable care in the use of his skill and in the application of his knowledge and will exercise his best judgment in the performance of work for which his services are engaged, within the limits of such calling. *Insurance Company v. Sprinkle Company*, 266 N.C. 134, 140, 146 S.E. 2d 53, 59 (1966).

We are not inadvertent to the holding of this Court in *Drilling Co. v. Nello L. Teer, Co.*, 38 N.C. App. 472, 248 S.E. 2d 444 (1978). There, we held that an engineering subcontractor could not be held liable for negligence to a drilling subcontractor in the absence of privity of contract. We hold, however, that the decision in *Drilling Co., supra*, despite its broad language, was not intended to encompass the factual situation disclosed by the case *sub judice*. The result reached here is based on our interpretation of prevailing and evolving principles of law as applied to the particular facts disclosed by the record before us. We note these salient differences which distinguish the instant case from *Drilling Co.*:

1. In *Drilling Co.*, it was stated specifically that the result reached was based on the authority of *Durham v. Engineering Co.*, 255 N.C. 98, 120 S.E. 2d 564 (1961). In *Durham, supra*, supervising engineers for a construction project were held not liable to the contractor and his surety for negligent performance of their contract with the City of Durham. Our Supreme Court determined that there was no mandatory provision in the contract to the effect that the engineer had the duty to supervise the work of the contractor and inspect the materials used and to see that the work and materials conformed to the plans and specifications. In other words, it was determined that the role of the supervising engineers was that of serving as *arbitrators* to resolve disputes between the parties. In the instant case, it is alleged that the function of the architects encompassed considerably more super-, visory control. It is alleged that the architect had the right to authorize or withhold payments, administer the contract, reject nonconforming work, and approve specifications and designs.

2. In both *Drilling Co.* and *Durham*, the parties against whom liability was sought to be imposed were consulting engi-

neers. In the instant case, we are concerned with an architect with alleged general supervisory power. While the responsibilities of consulting engineers and architects can, in many instances, be virtually the same and while most authorities apply the principles we enunciate here to both professions, we believe the distinction important here particularly in light of this statement in *Drilling Co.*, 38 N.C. App. at 475, 248 S.E. 2d at 446: "[T]his defendant [engineer] did not have final authority to determine compliance with the contract. Such authority lay ultimately in the architect in this case."

3. In *Drilling Co.*, the action was for tortious interference with the performance of a contract and the allegation against the consulting engineer was that he had *exceeded* the plan specifications. The allegation was that the engineer "went above and beyond the call of duty." That allegation prompted this Court to state that the defendant engineer "should not be unnecessarily burdened with fear of liability for requiring work *exceeding* plan specifications." 38 N.C. App. at 478, 248 S.E. 2d at 448. This reasoning would not apply in the instant case in that the allegation against the architect is for negligently approving improperly designed and constructed roof trusses.

We also note that another panel of this Court has independently reached a decision similar to ours in an opinion filed 19 June 1979, *Davidson and Jones, Inc. v. New Hanover*, 41 N.C. App. 661, 255 S.E. 2d 580 (1979). In *Davidson*, Judge Erwin also notes distinctions between *Durham* and *Drilling Co.* with a factual situation similar to the instant case.

Moreover, we believe it would be inconsistent for us to fail to extend the abolition of the privity requirement to the factual situation here presented. It was stated in *Drilling Co.* that North Carolina cases finding liability for negligent performance of a contractual duty in the absence of privity of contract have been limited to actions for personal injury or property damages. *See, e.g., Council v. Dickerson's Inc., supra* (automobile damaged because of negligent highway paving); *Jones v. Otis Elevator Co., supra* (personal injury from fall in elevator shaft); *MacIntyre v. Monarch Elevator and Machine Co.*, 230 N.C. 539, 54 S.E. 2d 45 (1949) (personal injury from fall in elevator shaft). Judge Morris (now Chief Judge) stated: "We have been cited to no North

Carolina decisions and have found none allowing recovery for loss of profits to a third party injured from the negligent breach of contract." 38 N.C. App. at 476, 248 S.E. 2d at 447. Here, however, we do not believe the action is one for mere "loss of profits." Assuming, *arguendo,* that there is validity to that subtle distinction, the cause of action here is for an economic loss as a result of alleged *property damages.* North Carolina has long held that a contracting party to a third person with whom the contracting party has made no contract may be liable in damages for negligence to the third person. As stated by Professor Prosser:

> [B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person. Prosser, Torts 4th Ed., § 93, p. 622.

In *Potter v. Carolina Water Co.,* 253 N.C. 112, 116 S.E. 2d 374 (1960), the plaintiff brought action to recover from defendant the value of their stock of merchandise and fixtures destroyed by a fire. Plaintiff's building and contents were destroyed by fire allegedly as a result of the fire department being without water pressure due to defendant's negligence after it responded to the fire alarm. Our Supreme Court, following a long line of cases, held that a cause of action existed on behalf of plaintiff who had no contract with defendant for defendant's negligently failing to reasonably comply with its contract with the muncipality. *See also, Gorrell v. Greensboro Water Supply Co.,* 124 N.C. 328, 32 S.E. 2d 720 (1899); *Fisher v. Greensboro Water Supply Co.,* 128 N.C. 375, 38 S.E. 912 (1901); *Jones v. Durham Water Co.,* 135 N.C. 553, 47 S.E. 615 (1904); *Morton v. Washington Light and Water Co.,* 168 N.C. 582, 84 S.E. 1019 (1915); *Powell v. Wake Water Co.,* 171 N.C. 290, 88 S.E. 426 (1916). We see little distinction between the type of economic loss suffered by the plaintiffs in the cited cases and that of the defendant contractor in the case at bar. The additional defendant (architect) here entered upon performance of an undertaking and, by doing so, entered into a relation with the contractor and others giving rise to a duty to those who must

reasonably rely upon his professional performance. The arrangement presented here of an architect having general supervisory responsibility over the contractor and other subcontractors on a construction project of this nature is a normal one in this commercial age. Each of the various participants must, to some degree, rely upon the professional performance of the other and each therefore has the responsibility of performing his task with due care. Clearly, the incidental fact of the existence of the contract between the architect and the property owner should not negative the responsibility of the architect when he enters upon a course of affirmative conduct which may be expected to affect the interest of third parties.

For the reasons stated above, we hold that the trial court erred in granting additional defendant's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

[4]   We now turn to the question of additional defendant's conditional cross appeal in which he contends that the trial court erred in denying his motion for summary judgment. We have indicated above, that in light of the trial court's allowance of the Rule 12(b)(6) motion, the motion for summary judgment became moot. For reasons not apparent to us, the trial court elected to deny the motion while granting the Rule 12(b)(6) motion. Since the trial court elected to rule on the summary judgment motion, it is necessary for us to review its propriety. We hold that the ruling was proper, albeit unnecessary.

Ordinarily, the denial of a motion for summary judgment does not affect a substantial right so that an appeal may be taken, but the moving party is free to preserve his exception for consideration on appeal from the final judgment. To allow an appeal from a denial of a motion for summary judgment would open the flood gate of fragmentary appeals and cause a delay in administering justice. *Motyka v. Nappier*, 9 N.C. App. 579, 176 S.E. 2d 858 (1970). Additional defendant's conditional cross appeal could be dismissed for that purpose. However, to avoid any confusion about the posture of the case on remand, we have reviewed the pleadings and supporting affidavits in support of and in opposition to the motion for summary judgment. Suffice it to say that they obviously give rise to genuine issues of· material fact

and granting of summary judgment would be patently erroneous. For the limited reasons stated, we affirm the trial court's allowance of the motion for summary judgment.

With respect to the defendant's appeal from the judgment dismissing the counterclaim for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), we hold that the judgment of the trial court was in error. The judgment is therefore

Reversed and remanded.

With respect to additional defendant's conditional cross appeal, the judgment of the trial court in denying the motion for summary judgment is

Affirmed.

Judges VAUGHN and CLARK concur.