HBS CONTRACTORS, INC., Plaintiff v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CUMBERLAND COUNTY BOARD OF EDUCATION, ELLINWOOD DESIGN ASSOCIATES, d/b/a MacMILLAN ELLINWOOD DESIGN ASSOCIATES, DAN MacMILLAN, R.V. BURIC CONSTRUCTION CONSULTANTS, INC., GEORGE W. McGEE, AND GILBERT CONSTRUCTION COMPANY, LTD., Defendants

No. COA97-864

(Filed 16 June 1998)

1. **Appeal and Error § 119 (NCI4th)— orders granting and denying summary judgment—interlocutory—substantial right not affected—no immediate appeal**

    The trial court's orders granting summary judgment in favor of a board of education on its trespass claim against the general contractor of a school construction project and denying the board's motion for summary judgment on the general contractor's claim against the board for breach of contract are interlocutory, do not affect a substantial right, and are not immediately appealable.

2. **Appeal and Error § 119 (NCI4th)— order granting summary judgment—substantial right affected—immediate appeal**

    The trial court's order granting summary judgment in favor of an architectural firm on a general contractor's claim for bad faith and negligence in administering a school construction contract affected a substantial right and is immediately appealable since the order constitutes a final judgment as to those claims and deprives the general contractor of a trial on those issues; a close relationship exists between the general contractor's claims

HBS CONTRACTORS, INC. v. NATIONAL FIRE INS. CO. OF HARTFORD

[129 N.C. App. 705 (1998)]

against the board of education and its claims against the architectural firm so that a possibility of inconsistent verdicts exists; and a determination of the appeal will promote finality.

**3. Architects § 10 (NCI4th)— negligent supervision of construction contract—genuine issues of material fact**

The forecast of evidence in a general contractor's action against the architectural firm which designed and supervised a school construction project presented genuine issues of material fact as to whether the architectural firm negligently administered the construction contract by (1) failing properly to design an approved erosion control plan; (2) improperly nullifying a valid pay application by the general contractor; and (3) failing to consider the general contractor's requests for extensions of time due to weather and other delays.

**4. Architects § 10 (NCI4th)— school construction contract— no quasi-judicial immunity for negligence**

Language in a school construction contract that the architect "will not be liable for the results of interpretations or decisions so rendered in good faith" did not give the architect quasi-judicial immunity which absolved the architect from liability for negligent administration of the contract.

**5. Architects § 10 (NCI4th)— bad faith supervision of construction contract—genuine issues of material fact**

The trial court erred in granting summary judgment for defendant architectural firm on plaintiff general contractor's claim for bad faith in the supervision of a school construction contract where plaintiff's forecast of evidence tended to show that defendant improperly abandoned an agreement it had with plaintiff to wait until near the end of the project to grant time extensions for delays, and that defendant, after approving plaintiff's pay application for a month's work, improperly nullified its approval after the board of education refused to pay the application.

Appeal by plaintiff and cross-appeal by defendant Cumberland County Board of Education from judgment entered 30 September 1996 by Judge E. Lynn Johnson and judgments entered 3 March 1997 by Judge Wiley F. Bowen in Cumberland County Superior Court. Heard in the Court of Appeals 2 April 1998.

HBS CONTRACTORS, INC. v. NATIONAL FIRE INS. CO. OF HARTFORD

[129 N.C. App. 705 (1998)]

*Lewis & Roberts, P.L.L.C., by Daniel K. Bryson and A. Graham Shirley, for plaintiff-appellant/appellee.*

*Reid & Morgan, L.L.P., by George C. Reid and Gregory K. Morgan; and Reid, Lewis, Deese, Nance & Person, by James R. Nance, Jr., for defendant-appellee/appellant Cumberland County Board of Education.*

*Young Moore and Henderson, P.A., by Brian E. Clemmons; and Allen and Moore, LLP, by Joseph C. Moore, III, for defendants-appellees MacMillan Ellinwood Design Associates and Dan MacMillan.*

WALKER, Judge.

This appeal arises from two separate actions filed by the plaintiff (HBS) in Robeson County, which were later removed to Cumberland County. The first action, filed 5 May 1995, alleged a breach of the construction contract by defendant Cumberland County Board of Education (Board) and claims which included negligence and bad faith on the parts of defendant architect Dan MacMillan (MacMillan) and defendant MacMillan Ellinwood Design Associates (MEDA) in administering the construction contract.

The second action, filed 10 January 1996, further alleged abuse of process and malicious prosecution on behalf of the Board. Thereafter, the Board filed a counterclaim against HBS for trespass. By consent, the two actions were then consolidated.

The Board then moved for partial summary judgment on its trespass counterclaim which the trial court granted on 30 September 1996. Thereafter, on 21 January 1997, MacMillan and MEDA moved for summary judgment as to the plaintiff's claims against them in the first action. The trial court granted this motion on 3 March 1997. HBS filed notice of appeal and this Court stayed all further proceedings pending the appeal.

On 25 June 1993, HBS entered into a contract with the Board whereby HBS agreed to serve as general contractor for the construction of Hefner Elementary School. The Board agreed to pay HBS $3,346,488.00 with the work to be completed within 450 consecutive calendar days from the time the "notice to proceed" became effective and to substantially complete the work thirty days prior to full completion. The construction of the school was a "multiple prime" proj-

ect with separate contracts being awarded for the plumbing, mechanical and electrical work.

Prior to the contract between HBS and the Board, the Board and MEDA entered into a contract on 11 December 1992 whereby MEDA agreed to provide architectural design and contract administration services during construction of the school. Although MacMillan was the architect in overall charge of the project, other MEDA employees were involved.

The contract administration services to be provided by MEDA included: inspection of the work with the attendant duty to reject non-conforming work; the duty to certify, modify or reject pay applications; grant time extensions; general administration of the contracts between the Board and the contractors; approval of specifications, designs, and shop drawings; and the responsibility to determine the contractors' compliance with the contract.

The "notice to proceed" was issued on 25 October 1993. From this time until late January 1994, HBS became concerned about delays it was encountering due to wet and cold weather, muddy conditions and restricted site access, along with other delays. Grady Simmons (Simmons) of HBS corresponded with MEDA expressing frustration over these delays.

The contract between HBS and the Board provided that claims "must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, which ever is later." Further, with respect to claims for delays for adverse weather conditions, the contract provided that these must be "documented by data substantiating that weather conditions were abnormal for the period of time and could not have been reasonably anticipated, and that weather conditions had an adverse effect on the scheduled construction." Moreover, the Supplementary General Conditions and General Requirements to the Contract also required HBS to keep daily weather logs on the job site which show "the effect of weather on progress of work."

At the summary judgment hearing, HBS produced evidence which tended to show pursuant to the above language in the contract, that the issue of time extensions was discussed during a January 1994 job conference. As a result of this discussion, an agreement was reached whereby requests for time extensions could be submitted to MEDA at

or near the end of the project. MEDA's project manager, Dan Blair (Blair), testified in his deposition that the total time extension MEDA would consider granting was intended to encompass and include, as fairly as possible, all delays that had been experienced by all the prime contractors. Further, MEDA had asked that HBS submit a monthly report indicating inclement weather dates. Moreover, Blair testified that because MacMillan wanted to avoid numerous requests for time extensions, the prime contractors were not required to submit claims requesting extensions. Further, the practice of granting time extensions at or near the end of a project was not unique to this project and had been implemented on at least two other jobs MEDA had with this Board.

On 28 July 1994, MacMillan reported to the Board's Facilities Committee that due to the number of weather delays experienced by HBS, the project would not be ready by February 1995. However, MacMillan also reported that HBS was making reasonable progress on the project.

During an October 1994 meeting, the Board's attorney, George Reid, informed MacMillan that his procedure for granting time extensions should be as the delays occur rather than at the end of the project. Thereafter, on 24 October 1994, the Board's assistant superintendent, Tim Kinlaw (Kinlaw) informed MEDA that HBS was not to receive any extensions of time.

On 24 October 1994, HBS submitted its routine monthly pay application for the work performed in September 1994. MacMillan certified this pay application and forwarded it to the Board for payment on 26 October 1994. Subsequently, Kinlaw informed MacMillan that the Board would not honor the pay application. In a letter to HBS dated 8 November 1994, MacMillan then informed HBS that the pay application was nullified and that grounds existed for this action. However, MacMillan testified in his deposition that the nullification was a mistake and that he "should have stuck to his guns and said that [he] was not going to withdraw the application."

Thereafter, on 23 November 1994, the Board voted to terminate its contract with HBS. The Board, in reaching this decision, relied on three reasons set forth by MacMillan certifying that cause existed to declare HBS in default and thus terminate the contract. Those reasons are as follows: (1) HBS's inability to complete the project by the contract completion date of 4 March 1995; (2) the North Carolina Department of Health and Natural Resources (DEHNR) had imposed

fines on the Board for erosion control violations for which HBS was responsible; and (3) there existed the potential for third party claims from other prime contractors as a result of delays caused by HBS.

On 7 December 1994, pursuant to provisions of the contract, HBS demanded that its dispute with the Board be submitted to arbitration. On 8 December 1994, the Board caused a criminal trespass warrant to be issued against HBS.

Before we address the appeal and cross-appeal in this action, we must first determine whether either of the appeals are interlocutory.

This Court in *New Bern Assoc. v. The Celotex Corp.*, 87 N.C. App. 65, 67, 359 S.E.2d 481, 483, *disc. review denied*, 321 N.C. 297, 362 S.E.2d 782 (1987) set out the following procedure for determining whether a given case is appealable:

> There is a three-step analysis: 1) A judgment which is final to all claims and parties is immediately appealable. 2) If a judgment is not final as to all parties and claims, it is appealable if it is final to a party or issue and has been certified for appeal by the trial court under N.C.G.S. Sec. 1A-1, Rule 54(b). 3) If it is neither final to all claims and parties, nor final to a party or issue and certified for appeal, a judgment is immediately appealable if it affects a substantial right of the parties.

Here, HBS appeals from the trial court's grant of summary judgment in favor of MEDA and MacMillan on HBS's claims for bad faith and negligence and the trial court's grant of summary judgment in favor of the Board on its counterclaim for trespass. Moreover, the Board appeals from the trial court's denial of its motion for summary judgment on HBS's claims for damages incurred after its termination by the Board and on HBS's claim that it was entitled to time extensions.

The judgments from which these parties appeal are not final as to all parties and claims. Moreover, the judgments were not certified for appeal by the trial court pursuant to Rule 54(b). Thus, we must determine whether either of the judgments affect a substantial right.

" 'The "substantial right" test for appealability is more easily stated than applied.' The substantial right question in each case is usually resolved by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Clevenger v. Pride Trimble Corp.*, 96 N.C. App.

631, 632, 386 S.E.2d 594 (1989) (*quoting Bailey v. Gooding*, 301 N.C. 205, 210, 270 S.E.2d 431, 434 (1980); (*citing Waters v. Personnel, Inc.* 294 N.C. 200, 240 S.E.2d 338 (1978)).

Moreover, "[a] substantial right . . . is considered affected if 'there are overlapping factual issues between the claim determined and any claims which have not yet been determined' because such overlap creates the potential for inconsistent verdicts resulting from two trials on the same factual issues." *Liggett Group v. Sunas*, 113 N.C. App. 19, 24, 437 S.E.2d 674, 677 (1993) (*quoting Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 26, 376 S.E.2d 488, 492, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989)). In *Liggett Group*, this Court found that a "substantial right" was involved due to the "close relationship between the claim of Liggett adjudicated by the trial court and those which remain." *Id.*

Recently, in *Tinch v. Video Industrial Services*, 347 N.C. 380, 493 S.E.2d 426 (1997), our Supreme Court reversed this Court's dismissal of the plaintiff's appeal as interlocutory. The Court held that "[t]he final dismissal of a claim under summary judgment involves a substantial right from which a plaintiff has an immediate right of appeal." *Id.* at 382, 493 S.E.2d at 428. The Court then determined that the order granting summary judgment in favor of one defendant on all of plaintiff's claims deprived the plaintiff of a jury trial on the alleged cause of action. The Court reasoned that there was also the possibility of inconsistent verdicts as to that defendant's liability if the plaintiff "[was] required to wait until after trial on the merits against the other defendants to have the merits of plaintiff's appeal as to [this defendant] determined." *Id.* Ultimately, it was found that a substantive determination on the appeal would "promote finality rather than fragmentation." *Id.*

[1] After reviewing the particular facts and procedural context of this case, we conclude the trial court's grant of summary judgment in favor of the Board on its claim for trespass and the trial court's denial of the Board's motion for summary judgment do not affect a "substantial right" and therefore HBS's appeal and the Board's cross-appeal on these issues are interlocutory.

[2] However, applying the reasoning in *Tinch*, we find HBS's appeal from the trial court's grant of summary judgment in favor of MEDA and MacMillan on its claims for bad faith and negligence do affect a "substantial right." The order granting summary judgment in favor of these defendants constitutes a final judgment as to HBS's claims for

bad faith and negligence and deprives HBS of a trial on these issues. Moreover, as the Board contends that it had just cause to terminate the contract based on the certification it received from MacMillan, there exists the possibility of inconsistent verdicts. As in *Liggett Group*, a close relationship exists here between the claim of HBS against the Board and HBS's claims against MEDA and MacMillan. Finally, in our view, a determination of these appeals would promote finality rather than a fragmentation of this action; therefore, we will address these appeals on the merits.

HBS first argues that the trial court erred in granting MEDA and MacMillan's motion for summary judgment as genuine issues of fact existed as to whether MEDA and MacMillan were negligent. As the claims against MacMillan arise due to his position with MEDA, we will hereinafter refer to these two defendants collectively as MEDA.

A motion for summary judgment is proper only when there is no material issue of fact and the movant is entitled to judgment as a matter of law. *Brenner v. School House, Ltd.*, 302 N.C. 207, 216, 274 S.E.2d 206, 212 (1981). The burden is on the movant to show the lack of any issue of fact. *Id.*

This Court in *Schoffner Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 257 S.E.2d 50, *disc. review denied*, 298 N.C. 296, 259 S.E.2d 301 (1979) concluded that the trial court erred in dismissing a negligence claim made by the plaintiff general contractor against the defendant architect. In so holding, the Court stated "that a contractor hired by the client to construct a building, although not in privity with the architect, may recover from the architect any extra costs resulting from the architect's negligence." *Id.* at 265-66, 257 S.E.2d at 55.

In reaching this conclusion, the Court in *Schoffner* reasoned that because "[a]ltogether too much control over the contractor necessarily rests [with the architect] for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor." *Id.* at 266, 257 S.E.2d at 55. Thus, the Court went on to find that where it is alleged that an architect with general supervisory power, such that he has the final authority to determine compliance with the contract [between the owner and the contractor], negligently performs a contractual duty, a "third party general contractor, who may foreseeably be injured or sustain an economic loss [as a result of the architect's negligence], has a cause of ac-

tion against the alleged negligent architect." *Id.* at 267, 257 S.E.2d at 56.

**[3]** In the instant case, HBS alleged that MEDA contracted with the Board to provide architectural services and supervision in connection with this project. It was further alleged that MEDA was negligent in performing these duties of administering the contract.

Moreover, the evidence, when viewed in the light most favorable to HBS, supports its argument that MEDA and MacMillan negligently administered the contract by: (1) failing to properly design an approved erosion control plan; (2) improperly nullifying a valid pay application of HBS; and (3) failing to consider HBS's requests for extensions of time due to weather and other delays.

On the other hand, MEDA argues that all of the actions complained of by HBS fell within its role as a decision maker under the contract and therefore distinguishes this case from *Schoffner.* We find this argument to be without merit as the duties undertaken by MEDA are substantially similar to the duties of the architect in *Schoffner. See also Davidson and Jones, Inc. v. County of New Hanover,* 41 N.C. App. 661, 255 S.E.2d 580, *disc. review denied,* 298 N.C. 295, 259 S.E.2d 911 (1979).

**[4]** We likewise reject MEDA's argument that because the contract contained language which provided that the architect "will not be liable for the results of interpretations or decisions so rendered in good faith" MEDA has "quasi-judicial immunity" and is absolved from liability for negligent administration of the contract. After careful review, we have found no authority to support this contention. *See RPR & Associates v. O'Brien/Atkins Associates,* —— F.Supp. —— (M.D.N.C., April 3, 1998) (Where plaintiff's claims are based on defendant's duties as an architect and supervisor arbitral immunity vanishes).

Therefore, we find factual issues exist as to the negligence of MEDA in its administration of the contract and the trial court erred in granting summary judgment in its favor.

**[5]** HBS next argues that the trial court erred in granting summary judgment in favor of MEDA on its claim for bad faith.

MEDA argues that because HBS's claims for breach of fiduciary duty, estoppel and unfair and deceptive trade practices were dis-

missed that no other claim for "bad faith" survived this dismissal. We disagree.

Our Supreme Court in *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979) noted that "when the allegations in the complaint give sufficient notice of the wrong complained of an incorrect choice of legal theory should not result in dismissal of the claim if the allegations are sufficient to state a claim under some other theory." *Id.* at 202, 254 S.E.2d at 625. Here, we find that HBS's allegations are sufficient to state a claim for bad faith and that issues of fact exist such that the trial court erred in granting summary judgment in favor of MEDA on this claim.

This Court, in *Ruffin Woody and Associates v. Person County*, 92 N.C. App. 129, 374 S.E.2d 165 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989), found that the following allegations made by the defendant against the plaintiff architect "at least raised an issue as to whether the architect failed to exercise honest judgment" such as to imply bad faith on the part of the architect: (1) the architect failed to prepare change orders; (2) the architect failed to properly inspect and reject non-conforming work; (3) the architect failed to guard the owner against defects by not making periodic visits to the site so as to monitor construction; and (4) the architect accepted and approved payment for work which was not performed in accord with the contract. *Id.* at 136, 374 S.E.2d at 170.

Here, plaintiff's evidence tended to show that MEDA improperly abandoned the agreement it had with HBS regarding waiting until near or at the end of the project to grant time extensions for delays and also that MEDA, after approving HBS's pay application for September 1994 work, improperly nullified the request after the Board refused to pay it. We find this evidence to be comparable to that in *Ruffin Woody* on the issue of bad faith.

In summary, HBS's appeal of the trial court's grant of summary judgment in favor of the Board on its trespass claim is interlocutory and thereby dismissed. The Board's cross-appeal of the trial court's denial of summary judgment in its favor on its claims that HBS is barred from recovering damages for work done after the contract was terminated and that HBS failed to comply with the contract provisions regarding time extensions are deemed to be interlocutory and are thereby dismissed. Further, the trial court erred in granting summary judgment in favor of MEDA and MacMillan on HBS's claims for negligence and bad faith.

Dismissed in part and reversed in part.

Judges WYNN and MARTIN, John C., concur.